UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RICHARD MORROW,

     Plaintiff,

v.                        Case No. 8:19-cv-3190-T-33AEP

BRENNTAG MID-SOUTH, INC.,

     Defendant.

_____/

**ORDER**

Before this Court is Defendant Brenntag Mid-South Inc.'s Motion to Exclude the Testimony of Plaintiff Richard Morrow's Proposed Expert Jeffrey S. Walker, M.D. (Doc. # 40), filed on September 15, 2020. Morrow responded in opposition on October 5, 2020. (Doc. # 45). For the reasons below, the Motion is granted.

**I.**    **Background**

Morrow initiated this action in state court on November 27, 2019, alleging that on February 16, 2018, he was involved in an automobile accident with a vehicle owned by Brenntag. (Doc. # 1-1 at ¶ 6). Brenntag removed the action to federal court on December 30, 2019. (Doc. # 1).

Morrow claims that as a result of the accident, he sustained injuries to his jaw, left arm, mid-back, and head.

1

(Doc. # 40-9 at 3). Morrow describes his pain as "chronic, constant headaches; sharp stabbing neck pain; [and] severe jaw pain (clicking crunching sound in the jaw joint, slipping of the jaw out of position)." (Id.).

Approximately eight months after the accident, Morrow sought treatment for his neck pain from Dr. Walker. (Doc. # 40-2 at 4). Dr. Walker assessed Morrow and found disc bulges, foraminal narrowing, and disc herniation. (Doc. # 40-11 at 30-31). Dr. Walker performed several treatments, including steroid injections and nerve block injections in February of 2019. (Id. at 23, 27). When Morrow continued to report pain, Dr. Walker performed a full disc replacement surgery in Morrow's neck in October 2019. (Id. at 1-3).

Morrow seeks to have Dr. Walker testify as both a "factual witness who has treated [Morrow] and can discuss in detail the treatment regimen," and as an expert witness who can opine on the causation of Morrow's injuries. (Doc. # 45 at 1-2). Specifically, Dr. Walker has opined (1) that Morrow's injuries "required initially conservative treatment and later surgery," and (2) that the "injuries necessitating the treatment are directly attributable to the February 16, 2018 accident." (Id.).

Brenntag now moves to exclude Dr. Walker's expert opinion on medical causation. (Doc. # 40). Brenntag argues that Dr. Walker failed to examine Morrow's prior medical history when formulating his opinion, therefore his opinion "is not based on any semblance of a sufficient factual basis and is not the product of the application of reliable principles and methods." (Id. at 2). Morrow has responded (Doc. # 45), and the Motion is ripe for review.

## II.  **Discussion**

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Implementing Rule 702, Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), requires district courts to ensure that any and all scientific testimony or evidence admitted is both relevant and reliable. See Id. at 589–90. The Eleventh Circuit has applied this standard to physicians offering causation testimony. While

> [a] treating physician may testify as a lay witness regarding his observations and decisions during treatment of a patient, once the treating physician expresses an opinion unrelated to treatment which is "based on scientific, technical, or other specialized knowledge," that witness is offering expert testimony for which the court must perform its essential gatekeeping function as required by Daubert.

Wilson v. Taser Int'l, Inc., 303 F. App'x 708, 712 (11th Cir. 2008) (citing United States v. Henderson, 409 F.3d 1293, 1300 (11th Cir. 2005)).

District courts must conduct this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005).

The Eleventh Circuit "requires trial courts acting as gatekeepers to engage in a 'rigorous three-part inquiry.'" Hendrix v. Evenflo Co., 609 F.3d 1183, 1194 (11th Cir. 2010). The district court must assess whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id. The proponent of the expert testimony bears the burden of showing, by a preponderance of the evidence, that the testimony satisfies each of these requirements. Id.

Brenntag does not challenge Dr. Walker's qualifications, nor does it dispute that Dr. Walker's testimony would be helpful to the trier of fact. Brenntag solely attacks Dr. Walker's reliability, arguing that his testimony lacks an adequate factual basis and a reliable method.

Federal Rule of Evidence 702(b) requires an expert's testimony to be based on "sufficient facts or data." Fed. R. Evid. 702(b). Furthermore, experts relying on experience must explain "how that experience is reliably applied to the facts.'" United States v. Frazier, 387 F.3d 1244, 1261 (11th Cir. 2004) (citations omitted).

When expert testimony's factual basis is called into question, "the Court's inquiry focuses not on whether the expert is correct, but whether the proponent of expert testimony has established by a preponderance of the evidence that the testimony is reliable in the context of the methodologies or techniques applied within the appropriate field." In re Polypropylene Carpet Antitrust Litig., 93 F. Supp. 2d 1348, 1352-53 (N.D. Ga. 2000). However, "nothing in either Daubert or the Federal Rules of Evidence requires a

5

district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).

Brenntag argues that Dr. Walker's opinion on causation lacks an adequate factual basis because Dr. Walker never reviewed any of Morrow's prior medical history or treatment records. (Doc. # 40 at 1). Instead, Dr. Walker primarily relied on allegedly inaccurate statements from Morrow and Morrow's counsel to formulate his conclusions. (Id. at 10).

Morrow responds that Dr. Walker is a well-credentialed expert who has spent the last ten years treating post-traumatic spine injuries. (Doc. # 45 at 2). Dr. Walker based his opinion on "a variety of sources of information," namely (1) his extensive experience; (2) a physical examination of Morrow after the December 2018 accident; (3) a review of MRIs from 2015; and (4) a review of MRIs from 2019, taken after the 2018 accident. (Id. at 1-2, 4). According to Morrow, this was "clearly sufficient data" to form an opinion, therefore Brenntag's arguments are more fitting for cross-examination. (Id. at 4-5).

The Court agrees with Brenntag that Morrow has not shown by a preponderance of the evidence that Dr. Walker's testimony on causation is reliable. Dr. Walker testified that he did not review any of Morrow's prior medical records when forming his initial opinion on the origin of Morrow's injuries. (Doc. # 40-5 at 7, 12-13, 17). Rather, Dr. Walker based his initial opinion on Morrow's representation that he "had no previous accidents, problems, or treatments to his neck." (Doc. # 40-11 at 30). When asked if he relied on any other source of information to verify this statement, Dr. Walker responded that he took Morrow at his word, stating: "I don't verify anything. I'm not a lie detector. I just believe what people tell me." (Doc. # 40-5 at 8).

However, the record reflects that Morrow had been involved in a car accident in December 2014. (Doc. # 40-2 at 2-3). That accident resulted in neck pain, for which Morrow sought treatment from orthopedic surgeon Paul Zak, M.D. (Id.). In late 2015, Dr. Zak recommended a "total disc replacement" surgery — the same surgery ultimately performed by Dr. Walker. (Doc. # 40-10 at 6, 8). Dr. Walker formed his initial opinion on causation without any knowledge of this accident, or Dr. Zak's recommendations for treatment, despite admitting that the existence of prior neck pain could have

changed his opinion about the causation of the injury. (Doc. # 40-5 at 12, 17-18).

Sometime after Dr. Walker formed this initial opinion, Morrow's counsel contacted Dr. Walker and informed him of the prior accident. (Doc. # 40-11 at 7). However, Dr. Walker still did not request or review Morrow's treatment records from Dr. Zak, or even discuss the accident with Morrow. (Doc. # 40-5 at 16-19). Dr. Walker examined one MRI report from 2015, taken after the 2014 accident, and concluded that the 2014 accident had "no material impact on [his] opinions regarding the causation of the C4-5 disc herniation . . . or the need for surgery." (Doc. # 40-11 at 6). In his report, Dr. Walker reaffirmed that in his opinion, Morrow's disc herniation was "causally related" to the 2018 accident. (Id. at 5).

Dr. Walker testified that the main basis for this second, corroboratory opinion was a representation from Morrow's counsel that Dr. Zak "never recommended any conservative treatment," and that Morrow "had actually improved and was pain free for years predating his February 16, 2018 motor vehicle accident." (Id. at 7; Doc. # 40-5 at 12-14, 17).

However, Dr. Zak's records indicate he did in fact recommend conservative treatment after the 2014 accident. (Doc. # 40-10). Furthermore, Morrow actually underwent a year

8

of conservative treatment with Lorraine Thorpe, D.C. (Doc. # 40-6). Dr. Thorpe testified that she treated Morrow forty-three times throughout 2015, and at the end of the year gave him a "poor" prognosis. (Id. at 2). Dr. Walker formed his second opinion on causation without knowledge of this past treatment, and without reviewing any of Dr. Thorpe's or Dr. Zak's prior treatment records. (Doc. # 40-5 at 16-17).

Other courts have held that the reliance of doctors on "inadequate and unreliable histories renders the entire diagnosis and accompanying testimony inadmissible." In re Silica Prod. Liab. Litig., 398 F. Supp. 2d 563, 638 (S.D. Tex. 2005) (citing Curtis v. M & S Petroleum, Inc., 174 F.3d 661, 670-71 (5th Cir. 1999)). Furthermore, the Eleventh Circuit has held that "[r]elevant expert testimony is admissible only if an expert knows of facts which enable him to express a reasonably accurate conclusion. Opinions derived from erroneous data are appropriately excluded." United States v. City of Miami, Fla., 115 F.3d 870, 873 (11th Cir. 1997) (internal citations omitted).

Here, Dr. Walker formed an opinion on medical causation without reviewing any of the prior treatment providers' records; indeed he was unaware Morrow even underwent conservative treatment with Dr. Thorpe. (Doc. # 40-5 at 16).

Therefore, the Court agrees with Brenntag that Dr. Walker's "superficial analysis" of Morrow's injuries is insufficient to satisfy Daubert. See North v. Ford Motor Co., 505 F. Supp. 2d 1113, 1119 (D. Utah 2007) (excluding testimony where the expert relied on an incomplete medical history and did not include pre-existing conditions, including a second car accident involving a plaintiff). Dr. Walker lacked a sufficient factual basis to form a reliable opinion on the causation of Morrow's injuries, therefore his expert testimony on causation is excluded. See Carmody v. State Farm Mut. Auto. Ins. Co., No. 6:14-cv-830-Orl-37, 2015 WL 5542534, at *3 (M.D. Fla. Sept. 18, 2015) (excluding physician testimony on causation where doctor only examined the plaintiff once, did not review the plaintiff's prior medical reports or history, did not communicate with the plaintiff's prior doctors before forming causation opinion, and was unaware about prior injuries the plaintiff sustained in accidents); In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 756 (3d Cir. 1994) (upholding exclusion of expert testimony on causation where the physician took a limited medical history of each plaintiff, but "did not even look at medical records of the plaintiffs much less examine them," and failed to consider alternative causes).

10

Even if the Court agreed with Morrow that Dr. Walker's factual basis was adequate, Dr. Walker does not establish that he used a reliable method to examine the cited data. Beside the representation from counsel that Morrow had been pain-free for several years before the 2018 accident, Dr. Walker only cites one factual basis for his opinion that Morrow's injuries were directly attributable to the 2018 accident, rather than the 2014 accident. Dr. Walker explains that a small rupture, or extrusion, in Morrow's C4-5 herniated disc appeared on the third MRI scan taken in July 2019, but was not present on the 2015 MRI scan. (Doc. # 40-11 at 5-6; Doc. # 40-5 at 13). Therefore, Dr. Walker concludes, the rupture (and in turn Morrow's injuries) must be attributable to the 2018 accident, rather than the 2014 accident.

The Court is not convinced this is a reliable method of determining causation. During deposition, Dr. Walker states the extrusion was not clearly visible on an MRI scan taken only a few months earlier in May 2019. (Doc. # 40-5 at 13). Dr. Walker explains "previous scans [including the May 2019 scans] were really not very good, and that's why we kept repeating them until we could get a good one." (Id.). The July 2019 MRI was of a much higher quality than the scans

taken in May 2019, which is why the rupture appeared so clearly. (Id.).

The Eleventh Circuit has held that a medical expert "need not rule out every possible alternative in order to form an opinion on causation," but

> expert opinion testimony is properly excluded as unreliable if the doctor "engaged in very few standard diagnostic techniques by which doctors normally rule out alternative causes and the doctor offered no good explanation as to why his or her conclusion remained reliable" or if "the defendants pointed to some likely cause of the plaintiff's illness other than the defendants' action and [the doctor] offered no reasonable explanation as to why he or she still believed that the defendants' actions were a substantial factor in bringing about that illness."

Wilson, 303 F. App'x at 714 (citing Wheat v. Sofamor, S.N.C., 46 F. Supp. 2d 1351, 1358 (N.D. Ga. 1999)). Here, Dr. Walker's testimony on causation does not sufficiently address the possibility that Morrow's injuries were caused by the 2014 accident. Dr. Walker forms his conclusion without addressing the possibility that the small rupture missed in the May 2019 scan may have also been present, but missed, in the 2015 MRI scans. (Doc. # 40-11 at 5-6). Nor does he acknowledge the possibility that the "C4-5 broad-based disk protrusion-type herniation" he observed in the 2015 MRI could have contributed to the extrusion seen in the July 2019 MRI. (Doc. # 40-5 at

15-16). Instead, Dr. Walker asserts that he saw the rupture for the first time in the July 2019 MRI, therefore he considered it "a permanent injury directly related to the February 16th, 2018, motor vehicle accident." (Id. at 13; Doc. # 40-11 at 6).

Daubert does not require the Court to accept an expert's speculation without a showing of a reliable method. Gen. Elec. Co., 522 U.S. at 146. There is "simply too great an analytical gap" between Dr. Walker's source material and his conclusion that the 2018 accident was the sole cause of Morrow's injuries, despite a similar accident in 2014 causing almost identical injuries. Id.; see also Wilson, 303 F. App'x at 714 (excluding expert testimony in part because an expert failed to rule out alternative mechanisms of injury); Myers v. Illinois Cent. R. Co., 629 F.3d 639, 645 (7th Cir. 2010) (upholding exclusion of causation testimony where the expert was unaware of a prior back injury and did not "rule in" or "rule out" any potential causes of injury, but "simply treated [the plaintiff] and assumed his injuries stemmed from his work").

Notwithstanding this exclusion, Dr. Walker may testify as a lay witness on his treatment of Morrow. See United States v. Henderson, 409 F.3d 1293, 1300 (11th Cir. 2005) ("A

13

treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party." (citing <u>Davoll v. Webb</u>, 194 F.3d 1116, 1138 (10th Cir. 1999)).

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1)   Defendant Brenntag Mid-South Inc.'s Motion to Exclude the Testimony of Plaintiff Richard Morrow's Proposed Expert Jeffrey S. Walker, M.D. (Doc. # 40) is **GRANTED.**

(2)   Dr. Walker may not opine as an expert on the causation of Morrow's injuries.

(3)   Dr. Walker may provide lay testimony on the treatment he provided Morrow.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>8th</u> day of December, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE